Harry K. THOMAS, Successor Trustee in Bankruptcy of Erie Forge & Steel Corporation, Bankrupt, Appellant,

v.

ROBLIN INDUSTRIES, INC., a New York Corporation.

No. 75–1008.

United States Court of Appeals, Third Circuit.

Argued June 6, 1975.

Decided July 31, 1975.

Harry D. Martin, Elderkin, Martin, Kelly, Messina & Zamboldi, Robert N. Spaeder, March, Spaeder, Baur, Spaeder & Schaaf, Erie, Pa., for appellant; Louis Loss, Cambridge, Mass., of counsel.

John G. Gent, Donald C. Buseck, Erie, Pa., for appellee.

Before SEITZ, Chief Judge, and ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Plaintiff is Trustee in Bankruptcy of Erie Forge & Steel Corporation ("Erie"), a Delaware corporation. He brought this action against its former majority stockholder, Roblin Industries ("Roblin"), a New York corporation. Plaintiff alleged violations of the federal securities law and breaches of Roblin's state law fiduciary duty to Erie. Judgment in the

non-jury trial was entered in defendant's favor and plaintiff appeals.

At the time plaintiff's cause of action is alleged to have arisen, the stock of both Erie and Roblin was traded on the American Stock Exchange. In January 1968, Roblin took direct control of Erie after acquiring 55% of the Erie common stock. Erie's net worth, as of April 1968, was $5,598,000, and its working capital was $3,500,000. However, Erie had a record of substantially unprofitable financial operations, which continued into the fiscal year beginning May 1, 1968. Thus, the last publicly disclosed figures released on March 16, 1969, showed a loss of $1,541,000 for the nine month period ending January 31, 1969. Erie had its largest one month loss to date in January 1969: approximately $518,000. This loss was included in the nine month report but not separately indicated. Erie suffered losses of $317,000 in February and $128,000 in March. At least the February loss was known to Roblin but was not publicly reported.

By February 1969, Erie's cash position had worsened and Roblin decided that $2,000,000 in cash was needed immediately if operations were to continue. Roblin's board approved such a loan but it was not implemented. On March 6, 1969, Roblin found it necessary to lend Erie $200,000 to meet its payroll. In late March 1969, Roblin's business consultants advised that $2,000,000 was insufficient to assist Erie and that at least $5,000,000 was required.

Between February 12, 1969, and April 10, 1969, Roblin sought the consent of Erie's secured creditors to gain a secured status for its contemplated $2,000,000 loan. During this period Roblin sought to locate a large investor who could provide Erie with both the money required and experienced management. Several substantial companies were approached about buying Roblin's Erie stock. After investigation, each declined to make an offer. On April 5, 1969, the Roblin directors considered and rejected the possi-

bility of a chapter XI bankruptcy proceeding for Erie.

About April 10, 1969, Roblin entered into an agreement for the sale of Erie stock with Peter Gruber ("Gruber") and Martin Hoffinger ("Hoffinger"). Gruber had a record in the financial community for "turning around" financially troubled companies. Under the agreement Roblin transferred 850,000 shares of Erie's stock to Gruber and Hoffinger who paid $50,000 cash for 100,000 shares and gave two notes for the remaining 750,000 shares. The notes did not bear interest and gave no recourse against Gruber and Hoffinger. The 750,000 shares were held in escrow as the collateral for the payment of the additional $2,375,000. The agreement also provided that Gruber and Hoffinger were required to supply $500,000 of borrowed money for the benefit of Erie under certain limited conditions. Roblin retained 129,934 Erie shares. The sale to Gruber and Hoffinger was announced by Roblin to the Wall Street Journal and published on April 14, 1969.

On April 12, 1969, Gruber and Hoffinger appointed a majority of the Erie Board. On April 28, 1969, Erie announced its intention to file a chapter XI petition. Such a petition was filed on April 30, 1969, and Erie was permitted by the court to continue as a debtor in possession. On May 2, 1969, Roblin began to sell its retained 129,934 shares of Erie stock through the American Stock Exchange. By May 22, 1969, Roblin had sold all of its Erie stock for $488,790.25.

Erie's chapter XI proceedings were unsuccessful and it was adjudicated bankrupt on July 15, 1969, at which time the Erie stock had no value. Erie's trustee than sued to recover the amount Roblin received for the sale of its stock to the public. The first count alleges a violation of Rule 10b–5, 17 C.F.R. § 240.10b–5 (1974), the second a violation of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e (1970), in failing to file a registration statement, and the third a state law breach of fiduciary duty claim. A fourth claim based on alleged mismanagement has not been pursued before us.

## I. VIOLATION OF RULE 10b–5

Plaintiff's first count seeks to recover the amount received from the sale of Roblin's Erie shares on the ground that the sales of such shares were the result of a scheme by Roblin which violated Rule 10b–5. The district court in effect found no violation of the Rule, apparently without addressing the issue of plaintiff's standing to assert a claim based on a 10b–5 violation. We find the issue of standing to be controlling.

■ The record does not suggest and plaintiff trustee does not contend that he or the parties he represents are complaining about a transaction in which any of them was either a buyer or a seller of Erie's securities. This is a critical deficiency, since the United States Supreme Court has recently held that only a buyer or seller of securities has standing to assert a claim based on a 10b–5 violation. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Based on *Blue Chip Stamps*, we find that the judgment of the district court dismissing the 10b–5 claim asserted in the first count must be affirmed because of plaintiff's lack of standing.

## II. VIOLATION OF THE SECTION 5 REGISTRATION REQUIREMENT

The second count of the amended complaint seeks to recover the amounts received from the public sale of the Erie shares on the ground that defendant violated Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, when it failed to file a registration statement with the S.E.C. and to deliver the requisite prospectus to each buyer in conjunction with its May 1969 sales of Erie stock. The district court concluded that plaintiff trustee lacked standing to assert this claim because he was neither a purchaser nor a representative of a purchaser. It is apparently plaintiff's contention that

unjust enrichment will result unless a civil remedy is granted it. .

Civil liability for a violation of Section 5 arises under Section 12 of the Securities Act of 1933 which provides in pertinent part:

Any person who—

■ offers or sells a security in violation of Section 5 . . .

\* \* \* \* \* \*

. . . shall be liable to the person purchasing such security from him who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

When securities are offered or sold in violation of Section 5, Section 12 explicitly affords a civil remedy only to a purchaser of such securities. Furthermore, our court, in construing Section 12 for possible Section 10(a) violations under the 1933 Act, has stated: "But they [referring, *inter alia*, to Section 12] afford no right of action to the corporation herein as much as it was not a purchaser." *Slavin v. Germantown Fire Ins. Co.*, 174 F.2d 799 (3rd Cir. 1949); 6 L. Loss, Securities Regulation 3840 (Supp. 1969). *Slavin* is dispositive on the issue of plaintiff's standing to assert a claim under Section 12.

■ We therefore are in agreement with the district court's holding that plaintiff trustee, not being a purchaser or representing a purchaser of the stock in question, lacked standing to assert the claim contained in the second count.

## III. CONTROLLING STOCKHOLDER'S BREACH OF FIDUCIARY DUTY [1]

■ Plaintiff asserts that Roblin bore a fiduciary relationship to Erie (1) imme-

1. Plaintiff also includes alleged violations of Rule 10b–5 and Section 5 of the 1933 Act or a combination of them as bases for this claim. Unless their subject matter would constitute bases for independent state claims, we do not think they are cognizable. To the extent their supporting facts are relevant to the state claim they are being considered.

diately prior to the Gruber-Hoffinger transaction and (2) at the time it sold its retained Erie shares. The second assertion is based on the argument that the financial arrangement between Gruber-Hoffinger and Roblin amounted to an option rather than a sale because of the no recourse provision. We think the facts show, as the district court found, that Gruber-Hoffinger took over control of Erie in fact and that the nature of the financial arrangement did not give Roblin control at the date of the sale of the retained Erie shares. Consequently, we conclude that no fiduciary relationship existed between Erie and Roblin at the date of the sale of the retained shares. We turn then to the real issue here of whether Roblin sold such shares on the basis of information acquired while a fiduciary.

The district court did not purport to consider what state law applied to the state law claim. Rather, it dismissed the claim because it found that Roblin was not in fact the controlling stockholder of Erie after the Gruber-Hoffinger transaction; that Roblin was not a controlling stockholder of Erie at the time the stock in question was sold in view of the fact that a chapter XI petition had previously been granted; and that Roblin did not benefit from the sale of its retained shares on the basis of essential undisclosed information concerning Erie's financial status.

 Preliminarily, had the district court looked to Pennsylvania law to determine what state law its courts would apply, we believe it would have found that the Pennsylvania courts would apply the Delaware law because Erie was incorporated in Delaware. *Kroese v. General Castings Corp.*, 179 F.2d 760 (3d Cir. 1950); Restatement (Second) of Conflicts § 306 (1971). Plaintiff's counsel ask us to predict that the Delaware

courts would adopt the rationale of *Diamond v. Oreamuno*, 24 N.Y.2d 494, 301 N.Y.S.2d 78, 248 N.E.2d 910 (1969). Alternatively, it is suggested that Delaware has already recognized the vitality of the *Diamond* principle in *Brophy v. Cities Service*, 31 Del.Ch. 241, 70 A.2d 5 (1949). Indeed, the chronology of these two cases suggest that the *Oreamuno* court may have recognized the *Brophy* principle rather than the converse. We read both *Diamond* and *Brophy* to stand for the same fundamental proposition: as a matter of common law, a fiduciary of a corporation who trades for his own benefit on the basis of confidential information acquired through his fiduciary position breaches his duty to the corporation and may be held accountable to that corporation for any gains without regard to whether the corporation suffered damages as a result of the transaction. This obligation continues even after termination of the relationship which created the fiduciary duty. Restatement of Restitution § 200, comment a (1937).

A factual prerequisite for the application of the so-called *Diamond* and *Brophy* principle is that the "inside information" must not be a matter of general knowledge at the time of the alleged breach, *Brophy, supra* at 7 (quoting Restatement of Restitution § 200, comment a). Therefore, if Roblin has demonstrated that the essential information concerning Erie's status was in the public domain before it commenced its May 1969 sales of the retained stock, no breach of fiduciary duty could be predicated on the transactions.[2]

Plaintiff does not challenge the finding of the district court that prior to the date when Roblin commenced the sale of the stock in question certain information concerning both Erie's financial status and the Gruber-Hoffinger transaction had been publicly disclosed. The ques-

**2.** We are aware of no Delaware law on the question of burden of proof on the breach of duty issue in a *Brophy* case where, as here, the relationship creating the defendant's fiduciary status has terminated prior to the sales in question. Because the facts are not in dispute and because of our disposition of this claim, we feel free to assume that Roblin had the burden of showing no misuse of undisclosed information obtained while acting as controlling stockholder.

tion remains, however, whether this information was sufficient to prevent the imposition of liability.

Substantial information regarding Erie's financial troubles had been made public prior to the sale. On March 16, 1969, Erie's nine month earnings statement for the period ending January 31, 1969, was published in the Wall Street Journal. It indicated that at the end of the nine month period Erie had sustained a loss in excess of 1.5 million dollars.

The Gruber-Hoffinger transaction had also been described in a news release published April 11, 1969, in the Buffalo Evening News. The release recited that defendant was selling 850,000 shares of Erie's outstanding stock to the two men and would retain 129,934 shares. It also stated that under the agreement the two men were paying Roblin $2,425,000, $50,000 cash for 100,000 shares, and the remainder in the form of two non-interest bearing notes payable within four years and secured by 750,000 Erie shares. Roblin's president indicated that the sale was being made so that Roblin would be able to "concentrate its resources on its current expansion program, while at the same time providing Erie Forge with an independent new management." The story also recited that for the nine months ending January 31, 1969, Erie reported a net loss of $1.5 million compared with a loss of $1.1 million a year earlier. A similar announcement also appeared in the Wall Street Journal on April 14, 1969.

On April 28, 1969, an article appeared in the Wall Street Journal indicating that Erie intended to file a petition under chapter XI. Such a petition was filed April 30, 1969. On May 5, 1969, a story appeared in the press announcing the fact that the federal court in Pittsburgh had "approved the petition" under chapter XI. It indicated that Erie had liabilities of $16 million and assets of only $12 million.

The district court found from the foregoing facts that the public was essentially aware of Erie's financial condition prior to the date of Roblin's commencement of the sale of its retained Erie stock on the American Stock Exchange. Plaintiff does not dispute the factual finding relied on by the district court.[3] Plaintiff argues, however, that several undisputed facts and inferences therefrom compel the conclusion that when Roblin sold its retained Erie shares it traded on information acquired as a fiduciary which was not a matter of general public knowledge and thereby breached its duty to Erie. We shall address plaintiff's contentions with respect to each fact with this claim in mind.

Plaintiff's first three contentions are: (1) that Roblin's April 14 announcement that it was retaining 129,934 Erie shares was deceptive because Roblin did not at that time intend to retain the shares as evidenced by its sale of the shares commencing some 17 days later; (2) that Roblin's public announcement of the Gruber-Hoffinger transaction did not disclose that the notes imposed no personal liability; and (3) that the announcement was deceptive because it gave a false reason for the sale of Erie stock to Gruber and Hoffinger—*inter alia,* that the stock was being sold "so that Roblin would be able to concentrate its resources on its current expansion program."

■ But plaintiff's cause of action is not grounded in misrepresentation or deceit, and we cannot see how any deception of the public with regard to these collateral matters can help plaintiff prove his state law claim that Roblin sold the retained stock on the basis of inside information. We therefore conclude that the first three contentions re-

---

**3.** He does contend that, for reasons developed in his brief, the findings are not the judge's independent product because he largely adopted those submitted by defendant's counsel.

Since plaintiff does not claim that the findings are erroneous in any material way, it is not necessary to consider this contention.

lied upon by plaintiff are irrelevant to the issues on this appeal.

Another fact relied upon by plaintiff is that at the time of the sale of the retained stock, Roblin, but not the public, was aware that Erie had suffered substantial losses in February and March. Roblin apparently disagrees as to the March period but we make no point of this dispute. Additionally, the large January loss was not shown separately in financial releases but only as part of the nine-month earnings statement.

■ Given the extent of the public's knowledge concerning Erie's financial state prior to the date Roblin commenced the sale of its retained shares, can it be said that Roblin's decision to sell was, in any significant way, based on its inside knowledge as to the earnings for the months in question?[4] The public knew of Erie's large nine-month losses and the substantial increase over the previous period. It was also public knowledge that the value of Erie's liabilities substantially exceeded its assets. Of vital significance, the public was aware of the court action taken with respect to Erie's filing of a chapter XI petition. When that fact is considered in conjunction with the public notice of Erie's distressed financial condition, we are constrained to agree with the district court that selling with the non-public knowledge of the January, February and March losses did not amount to trading on material inside information.

Plaintiff next relies on the fact that while in control of Erie, Roblin was advised by its financial consultants that it would take $5,000,000 to turn Erie around financially. Based on this and Roblin's awareness of Erie's financial plight, plaintiff also argues that Roblin knew a chapter XI proceeding was not feasible. Plaintiff urges that Roblin thus had an advantage since the public was not as well aware of the extent of Erie's financial distress.

■ The district court concluded that the essential information concerning Erie's financial status was known to the public before Roblin commenced the sale of its retained stock. We agree. We need not decide what the consequences would have been had the chapter XI proceedings not intervened. What we do decide is that the public disclosures incident to the initiation of the arrangement proceedings by Erie and other financial disclosures fairly apprised the general public of its truly distressed condition. Because of its past connection defendant was, of course, more acutely aware of Erie's financial plight than the general public, but we do not consider any inside view of Erie's decline as materially more significant than the assessment which could have been made on information available to the public at the critical date. Nothing in the public financial history of Erie up until the date Roblin sold the retained shares should have suggested any reason for optimism concerning its prospects for a successful arrangement.

In sum, the only inside information to which plaintiff points relates to Roblin's knowledge of Erie's finances. Since the essential picture of Erie's distressed financial condition was within the public domain at the time Roblin sold its retained Erie stock, we conclude that it satisfied any burden of showing that it did not profit by exploiting inside information obtained as a fiduciary. The third count was therefore properly dismissed.

The judgment of the district court will be affirmed.

---

4. We note that the district court found that Roblin's decision to sell came only after the announcement of Erie's intention to file a chapter XI petition.