**David B. KUSNER, Appellant,**

v.

**FIRST PENNSYLVANIA CORPORATION et al.**

No. 75–1629.

United States Court of Appeals, Third Circuit.

Submitted Jan. 12, 1976.

Decided March 15, 1976.

---

Mitchell A. Kramer, Steven Kapustin, Kramer & Salus, Philadelphia, Pa., for appellant.

Edward F. Mannino, Philadelphia, Pa., for appellees, First Pennsylvania Corp., First Pennsylvania Bank N.A., Associated Mortgage Companies, Inc., Associated Advisors, Inc., John R. Bunting, Philip Zinman, and Ralph W. Ervin; Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., of counsel.

Henry T. Reath, Jane D. Elliott, Philadelphia, Pa., for appellees, Edmund N. Bacon, Richard W. Baker, Jr., M. Todd Cooke, and Kenneth S. Sweet, Jr.; Duane, Morris & Heckscher, Philadelphia, Pa., of counsel.

Robert S. Ryan, Philadelphia, Pa.; Drinker, Biddle & Reath, Philadelphia, Pa., of counsel.

Thomas V. Urmy, Jr., Boston, Mass., for appellee, First Pennsylvania Mortgage Trust; Warner & Stackpole, Boston, Mass., of counsel.

## OPINION OF THE COURT

Before HASTIE, GIBBONS and ROSENN, Circuit Judges.

GIBBONS, Circuit Judge.

This is an appeal from part of an order dismissing a complaint on the ground that the plaintiff lacks standing to assert the claims alleged in any of the four counts. Plaintiff-appellant is David B. Kusner, the holder of eighteen convertible debentures and warrants to purchase shares of the First Pennsylvania Mortgage Trust (the Trust), a Massachusetts business trust organized under the sponsorship of First Pennsylvania Corporation. The defendants are First Pennsylvania Corporation; its subsidiaries, First Pennsylvania Banking and Trust Co. (the Bank), Associated Mortgage Companies, Inc. (the mortgage banker) and Associates Advisors, Inc. (the investment advisers); and eight individual defendants who are trustees of the Trust. Counts I–III of the complaint allege derivative causes of action against the Trust, which is a nominal defendant, for alleged violations of the Investment Advisers Act,[1] for breach of fiduciary duties and for self-dealing. Count IV alleges a Rule 23(b)(3) class action, on plaintiff's own behalf and on behalf of other holders of convertible debentures and warrants. That count repeats the allegations of Counts I–III, but also alleges that the plaintiff purchased the securities in reliance on a prospectus which was materially false and misleading.[2]

The district court held that Counts I–III should be dismissed because plaintiff was a creditor of the Trust and as such, under Rule 23.1 and our holding in *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727 (3d Cir. 1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971), could not pursue a derivative claim; because the Investment Advisers Act did not afford creditors standing to prosecute derivative suits for the benefit of the Trust; and because the complaint did not allege compliance with

---

1. 15 U.S.C. §§ 80b–1 to –21.

2. Paragraph 67 of the complaint alleges:

 Defendants caused false and misleading statements to be included in, and omissions of material facts in connection with, the prospectus (Exhibit "A") including but not limited to the following:

 a. Defendants' failed to disclose that they would pursue a policy of not writing off or writing down the value of assets on their books even if loans were in default or foreclosed;

 b. Defendants' failed to disclose that the investment adviser would retain for its own account and not transmit to Trust all late charges paid by borrowers;

 c. Defendants' failed to disclose that it would be to the financial advantage of adviser to make loans at high interest rates where the risk of default was high;

 d. Defendants' failed to disclose the domination of the outside directors by Bank and that Directors would rely on Bank, and its subsidiaries and employees for all information and advise on the operation of Trust;

 e. Defendants' failed to disclose that defendants would follow a policy of relying solely on Advisor to originate loans;

 f. Defendants' failed to disclose that Adviser was not registered under the Advisers Act;

 g. Defendants' failed to disclose that assets were sold to Trust at excessive prices;

 h. Defendants' failed to disclose it would follow a policy of treating sums committed to grant mortgages in the future as assets of the Trust for purposes of computing the monthly fees due Adviser;

 i. Defendants' failed to disclose that they would permit Adviser to charge excessive and unreasonable management fees and not limit or otherwise control Adviser in charging fees to Borrowers from Trust and would permit Adviser to charge unreasonable and excessive fees to Borrowers from Trust, thus reducing Trust's income.

the requirement of Rule 23.1 that a demand for action be made on the independent trustees prior to suit. No appeal has been taken from the dismissal of Counts I–III, and thus the correctness of those rulings is not before us. The district court also dismissed Count IV, holding that the plaintiff, a mere creditor, lacked individual standing to sue.[3] This appeal is from that ruling. We reverse.

## I

Although Count IV is premised upon many of the same facts alleged in the derivative counts, it is a direct suit by a purchaser of securities, based on §§ 11 and 17(a) of the Securities Act, 15 U.S.C. §§ 77k and 77q(a), and on §§ 10(b) and 18 of the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78r. The district court concluded that the injury complained of in Count IV was not to the individual debenture holders, but to the Trust, and thus derivative. Invoking the rule of *Kauffman v. Dreyfus Fund, Inc., supra,* that a security holder may maintain a personal action only where he has suffered individual injury, the district court concluded that all the wrongs complained of were to the Trust, and dismissed Count IV of Kusner's complaint for lack of the requisite personal interest.

This ruling, unfortunately, disregarded the allegations of the complaint, quoted in note 2 *supra,* regarding the falsity of the prospectus and the plaintiff's reliance thereon. The defendants would have us disregard those allegations for they argue that even assuming both falsity and reliance, there has been no injury because the debentures are not in default on either interest or principal. To do so, however, we would have to ignore the convertible and warrant features of these securities.

 The statutory provisions relied on in Count IV prohibit misrepresentations and material omissions in connection with the purchase and sale of securities. A private action for damages based on Rule 10b–5 requires that the plaintiff or those he represents either have bought or sold shares in connection with the fraud. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). *See Thomas v. Roblin Industries, Inc.,* 520 F.2d 1393 (3d Cir. 1975). The convertible debentures and the warrants here involved are securities within the meaning of both the Securities Act and the Securities Exchange Act. 15 U.S.C. §§ 77b(1), 78c(a)(10). The plaintiff alleges a purchase in reliance on a prospectus.

There is no question, then, that he meets the standing test of the *Blue Chip-Birnbaum* rule. The only remaining question is whether, on any state of facts which he might prove under the allegations of Count IV, he could show injury. Defendants argue that as long as the debentures are not in default, Kusner has not exercised his conversion privilege and he has not purchased stock pursuant to the warrants, he has not been injured by any misrepresentations that might have occurred. This argument overlooks the significant difference between debentures having no stock purchase or conversion features and debentures sold with such privileges. Because an appreciation of this difference is vital to this appeal, our analysis will begin by way of illustration.

To start with the simplest variety, let us hypothesize a $1000 bond with an 8% interest rate and no warrants or conversion features. The market price of that bond, assuming the issuer is solvent, will be primarily a function of the market interest rate. A prospectus containing representations about earnings potential which might be of material interest to a stockholder would, in all likelihood, be of no interest to the bondholder. This is because the bondholder will be paid his principal and interest regardless, and the market price of his security will be determined by factors external to the corporation's earnings.

---

**3.** The district court opinion is reported at 395 F.Supp. 276 (E.D.Pa.1975).

If, however, that same bond is sold with a warrant to purchase one share of the corporation's common stock at any time within a fixed time at a fixed price, then representations which are material to a purchaser of stock become material to the purchaser of the bond. When the issuer decided to issue a bond with a warrant attached it probably did so in the expectation that the potential earnings of the corporation would make the warrant attractive, and thereby produce a lower interest rate on the bond. The extent to which the market interest rate exceeded the interest rate to which bond purchasers agreed correlated with the expectation that the corporation's stock would advance in price above the warrant price. *See* Fleischer & Cary, The Taxation of Convertible Bonds and Stock, 74 Harv.L.Rev. 473, 474 (1961). If that interest differential was the result of misstatements in the prospectus, a purchaser of the bond and warrant who relied on the prospectus may well be able to prove causative injury. If the facts were such that had they been revealed there could have been no expectation that the market price of the corporation's stock would ever rise above the warrant price, then the warrant was actually worthless, and any interest differential on the bond was obtained by fraud.

A convertible bond is similar though not functionally identical to a bond and warrant, and for present purposes the same analysis applies. The difference is that the exercise of the conversion option entails the surrender of the fixed payment and interest obligations in exchange for an equity position. To a certain extent the conversion decision will be made on the basis of a factor external to the corporation, namely, the future market rate of interest. But the market rate of interest will not alone be determinative. If during the conversion period the value of the common stock (a function of its market price and dividend position) greatly exceeds the value of the fixed payment and interest obligation, a holder probably will exercise the conversion privilege. The possibility that the value of common stock will increase to a point where it exceeds the value of the bond is the sales feature with which the issuer obtained a lower-than-market interest rate on the bond. Thus just as with a bond with warrant, a misrepresentation in the prospectus that would be material to a stock purchaser would be material to a convertible bond purchaser. The convertible bond purchaser may well have been defrauded of the interest differential.[4]

In discussing the derivative counts of the complaint the district court reasoned that "the concept of proprietary interest is distorted beyond analytical usefulness when the holder of a mere option to purchase shares who has not yet exercised his option or legally committed himself to the exercise of his option is held a shareholder under Rule 23.1 by virtue of the dollar amount of his financial investment in business enterprise on behalf of which he seeks to bring suit." 395 F.Supp. at 282 (footnote omitted). Since no appeal has been taken from the dismissal of the derivative counts, we have no occasion to consider whether the quoted discussion is a proper limitation on the derivative remedy.[5] But whatever may be said for the district court's reasoning in the derivative suit context, it is totally inapplicable to direct actions under § 10(b). Options and conversion features are securities

4. For a more extensive analysis of the differences between bonds with warrants and bonds with conversion privileges, see Klein, The Convertible Bond, A Peculiar Package, 123 U.Pa.L. Rev. 547 (1975).

Convertible bonds have been described as deferred equity financing, resorted to by issuers whose common stock price is low, but is expected to rise. *See* Fleischer & Cary, The Taxation of Convertible Bonds and Stock, 74 Harv.L.Rev. 473, 474 (1961), quoting C. Pilcher, Raising Capital with Convertible Securities 138 (1955). Arguably, they should for most purposes be treated similarly to stock. Since in this case we deal with a dismissal for failure to state a claim upon which relief may be granted, and we have identified one possible ground upon which relief might be granted, we need not here explore all possible legal ramifications of the device.

5. *Compare,* however, *Hoff v. Sprayregan,* 52 F.R.D. 243 (S.D.N.Y.1971).

for which purchasers give and issuers receive separate consideration. If the purchasers can prove that they parted with that consideration as a result of material misrepresentations in a prospectus, they may recover in a direct action whether or not their interest in the corporation would support a derivative suit.

## II

■ The defendants urge, however, that the § 10(b) action is barred for another reason. They point to Section 8.7 of the Indenture under which the securities were issued which prohibits suits

> "for the execution of any trust or power hereof, or for the enforcement of any other remedy under or upon this Indenture"

unless the holders of a majority in amount of the debentures then outstanding shall have made a written request for such action upon the Indenture Trustee and shall have afforded it a reasonable opportunity to proceed.[6] The right which Kusner seeks to vindicate in Count IV, however, derives not from the Indenture, but from federal law. The defendants cite no authority for the proposition that a "no action" provision in an indenture effectively bars a direct action based upon the federal securities laws. Moreover, the indenture provision, *see* note 6 *supra,* does not in terms apply to an action arising other than under the agreement. *Quirke v. St. Louis-San Francisco Ry.,* 277 F.2d 705 (8th Cir.), *cert. denied,* 363 U.S. 845, 80 S.Ct. 1615, 4 L.Ed.2d 1728 (1960), upon which defendants heavily rely, can easily be distinguished on this latter ground. Where the parties have not contractually established conditions precedent to the maintenance of suit, the courts will imply none.

We conclude that Count IV of Kusner's complaint states a cause of action under the federal securities laws. In the present posture of the case we express no view as to the appropriateness of relief against all of the named defendants, since no effort was made in their brief to separate liability.

The order dismissing Count IV will be reversed and the case remanded for further proceedings on that count.

ROSENN, Circuit Judge (concurring).

I agree with the majority that we must reverse the dismissal of Count IV of Kusner's complaint. I believe, however, that his cause of action rests not only on section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1971), discussed in Part I of the majority opinion, but at least on one other section of the federal securities laws.

Of particular applicability here is section 11 of the Securities Act of 1933, 15 U.S.C. § 77k (1971). It provides in relevant part:

> (a) In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security . . . may . . . sue—
>> (1) every person who signed the registration statement;
>> (2) every person who was a director of . . . or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted . . . .

Kusner directed his complaint at the allegedly false and misleading statements in the prospectus incorporated into the regis-

---

6. The Indenture provides in pertinent part:

SECTION 8.7. No holder of any Debenture shall have the right to institute any suit, action or proceeding, in equity or at law, for the execution of any trust or power hereof, or for the enforcement of any other remedy under or upon this Indenture, unless the holders of a majority in principal amount of the Debentures then Outstanding shall have made written request upon the Indenture Trustee and shall have afforded to it a reasonable opportunity either to proceed to exercise the powers hereinbefore granted or to institute such action, suit or proceeding in its own name, and shall have offered to the Indenture Trustee security and indemnity satisfactory to it against the costs, expenses and liabilities to be incurred therein or thereby, and the Indenture Trustee shall have refused or neglected to comply with such request within a reasonable time . . . .

tration statement. Section 11 is more precisely tailored to this set of facts than is section 10(b), the general fraud section of the 1934 Act.

Moreover, under section 11 Kusner need only show that he acquired securities covered by the prospectus and that the false statements or omissions were material.[1] Neither reliance nor a causal connection between the drop in value of the security and the false or misleading registration statement is an element of a section 11 action. *See* 3 L. Loss, Securities Regulation at 1721–1735 (2d ed. 1961). Nor is a section 11 plaintiff required to prove fraud. Rather, as the Second Circuit has stated:

> Civil liability under section 11 and similar provisions was designed not so much to compensate the defrauded purchaser as to promote enforcement of the Act and to deter negligence by providing a penalty for those who fail in their duties.

*Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970). Thus, holders of convertible debentures who simply alleged material false statements and material omissions in a registration statement under which they purchased the bonds were held to have stated a sufficient cause of action under section 11 in *Escott v. Barchris Construction Co.*, 283 F.Supp. 643 (S.D.N.Y.1968).

On the other hand, while liability may be established more readily under section 11 of the 1933 Act, the scope of liability may be more limited than under section 10(b) of the 1934 Act. Liability under section 11 may not be imposed upon those defendants which did not sign the prospectus or perform directorial functions for the Trust.[2] Moreover, if Kusner proceeds under section 11, he may need to consider whether he will be precluded from proceeding under section 10(b) as well. *Montague v. Electronic Corp. of America*, 76 F.Supp. 933, 936 (S.D.N.Y. 1948).[3]

As to the defendants' contention that Kusner is barred from suit by section 8.7 of the Indenture, I join with Judge Gibbons in rejecting that argument for the reasons stated in part II of the majority opinion.

---

1. "Material" is defined by 17 C.F.R. § 230.-405(1) (1975) as "matters as to which an average prudent investor ought reasonably to be informed before purchasing the security registered."

2. A "controlling person" may be reached, however, under section 15 of the Securities Act of 1933, 15 U.S.C. § 77o (1971).

3. *But cf. Feit v. Leasco Data Processing Equipment Corp.*, 332 F.Supp. 544, 563 (E.D.N.Y. 1971); *Rosenberg v. Globe Aircraft Corp.*, 80 F.Supp. 123, 124 (E.D.Pa.1948).