Chief Judge Fuld.
Upon this appeal from an order denying a motion to dismiss the complaint as insufficient on its. face, the question presented — one of first impression in this court — is whether officers and directors may be held accountable to their corporation for gains realized by them from transactions in the company’s stock as a result of their use of material inside information.
The complaint was filed by a shareholder of Management Assistance, Inc. (MAI) asserting a derivative action against a number of its officers and directors to compel an accounting for profits allegedly acquired as a result of a breach of fiduciary duty. It charges that two of the defendants — Oreamuno, chairman of the board of directors, and Gonzalez, its president — had used inside information, acquired by them solely by virtue of their positions, in order to reap large personal profits from the sale of MAI shares and that these profits rightfully belong to the corporation. Other officers and directors were joined as defendants on the ground that they acquiesced in or ratified the assertedly wrongful transactions.
MAI is in the business of financing computer installations through sale and lease back arrangements with various commercial and industrial users. Under its lease provisions, MAT was required to maintain and repair the computers but, at *497 the time of this suit, it lacked the capacity to perform this function itself and was forced to engage the manufacturer of the computers, International Business Machines (IBM), to service the machines. As a result of a sharp increase by IBM of its charges for such service, MAI’s expenses for August of 1966 rose considerably and its net earnings declined from $262,253 in July to $66,233 in August, a decrease of about 75'%. This information, although earlier known to the defendants, was not made public until October of 1966. Prior to the release of the information, however, Oreamuno and Gonzalez sold off a total of 56,500 shares of their MAI stock at the then current market price of $28 a share.
After the information concerning the drop in earnings was made available to the public, the value of a share of MAI stock immediately fell from the $28 realized by the defendants to $11. Thus, the plaintiff alleges, by taking advantage of their privileged position and their access to confidential information, Oreamuno and Gonzalez were able to realize $800,000 more for their securities than they would have had this inside information not been available to them. Stating that the defendants were “ forbidden to use [such1] information * * * for their own personal profit or gain ”, the plaintiff brought this derivative action seeking to have the defendants account to the corporation for this difference. A motion by the defendants to dismiss the complaint—pursuant to CPLR 3211 (subd. [a], par. 7) — for failure to state a cause of action was granted by the court at Special Term. The Appellate Division, with one dissent, modified Special Term’s order by reinstating the complaint as to the defendants Oreamuno and Gonzalez. The appeal is before us on a certified question.
In reaching a decision in this case, we are, of course, passing-only upon the sufficiency of the complaint and we necessarily accept the charges contained in that pleading as true.
It is well established, as a general proposition, that a person who acquires, special knowledge or information by virtue of a confidential or fiduciary relationship with another is not free to exploit that knowledge or information for his own personal benefit but must account to his principal for any profits derived therefrom. (See, e.g., Byrne v. Barrett, 268 N. Y. 199.) This, in turn, is merely a corollary of the broader principle, inherent *498 in the nature of the fiduciary relationship, that prohibits a trustee or agent from extracting secret profits from his position of trust.
In support of their claim that the complaint fails to state a cause of action, the defendants take the position that, although it is admittedly wrong for an officer or director to use his position to obtain trading profits for himself in the stock of his corporation, the action ascribed to them did not injure or damage MAI in any way. Accordingly, the defendants continue, the corporation should not be permitted to recover the proceeds. They acknowledge that, by virtue of the exclusive access which officers and directors have to inside information, they possess an unfair advantage over other shareholders and, particularly, the persons who had purchased the stock from them but, they contend, the corporation itself was unaffected and, for that reason, a derivative action is an inappropriate remedy.
It is true that the complaint before us does not contain any allegation of damages to the corporation but this has never been considered to be an essential requirement for a cause of action founded on .a breach of fiduciary duty. (See, e.g., Matter of People [Bond & Mtge. Guar. Co.], 303 N. Y. 423, 431; Wendt v. Fischer, 243 N. Y. 439,443; Dutton v. Willner, 52 N. Y. 312, 319:) This is because the function of such an action, unlike an ordinary tort or contract case, is not merely to compensate the plaintiff for wrongs committed by the defendant but, as this court declared many years ago (Dutton v. Willner, 52 N. Y. 312, 319, supra), “ to prevent them, by removing from agents and trustees all inducement to attempt dealing for their own benefit in matters which they have undertaken for others, or to which their agency or trust relates.” (Emphasis supplied.)
Just as a trustee has no right to retain for himself the profits yielded by property placed in his possession but must account to his beneficiaries, a corporate fiduciary, who is entrusted with potentially valuable information, may not appropriate that asset for his own use even though, in so doing, he causes no injury to the corporation. The primary concern, in a case such as this, is not to determine whether the corporation has been damaged but to decide, as between the -corporation and the defendants, who has a higher claim to the proceeds derived from the exploitation of the information. In our opinion, there can be no justifi *499 cation for permitting officers and directors, such as the defendants, to retain for themselves profits which, it is alleged, they derived solely from exploiting information gained by virtue of their inside position as corporate officials.
In addition, it is pertinent to observe that, despite the lack of any specific allegation of damage, it may well be inferred that the defendants’ actions might have caused some harm to the enterprise. Although the corporation may have little concern with the day-to-day transactions in its shares, it has a great interest in maintaining a reputation of integrity, an image of probity, for its management and in insuring the continued public acceptance and marketability of its stock. When officers and directors abuse their position in order to gain personal profits, the effect may be to cast a cloud on the corporation’s name, injure stockholder relations and undermine public regard for the corporation’s securities. As Presiding Justice Botein aptly put it, in the course of his opinion for the Appellate Division, “ [t]he prestige and good will of a corporation, so vital to its prosperity, may be undermined by the revelation that its chief officers had been making personal profits out of corporate events which they had not disclosed to the community of stockholders.” (29 A D 2d, at p. 287.)
The defendants maintain that extending the prohibition against personal exploitation of a fiduciary relationship to officers and directors of a corporation will discourage such officials from maintaining a stake in the success of the corporate venture through share ownership, which, they urge, is an important incentive to proper performance of their duties. There is, however, a considerable difference between corporate officers who assume the same risks and obtain the same benefits as other shareholders and those who use their privileged position to gain special advantages not available to others. The sale of shares by the defendants for the reasons charged was not merely a wise investment decision which any prudent investor might have made. Rather, they were assertedly able in this case to profit solely because they had information which was not available to any one else — including the other shareholders whose interests they, as corporate fiduciaries, were bound to protect.
*500 Although no appellate court in this State has had occasion to pass upon the precise question before us, the concept underlying the present cause of action is hardly a new one. (See, e.g., Securities Exchange Act of 1934 [48 U. S. Stat. 881], § 16[b]; U. S. Code, tit. 15, '§ 78p, subd. [b]; Brophy v. Cities Serv. Co., 31 Del. Ch. 241; Restatement, 2d, Agency, § 388, comment c; Israels, A New Look at Corporate Directorship, 24 Business Lawyer 727, 732 et seq.; Note, 54 Cornell L. Rev. 306, 309L-312.) Under Federal law (Securities Exchange Act of 1934, § 16[b]), for example, it is conclusively presumed that, when a director, officer or 10% shareholder buys and sells securities of his corporation within a six-month period, he is trading on inside information. The remedy which the Federal statute provides in that situation is precisely the same as that sought in the present case under State law, namely, an action brought by the corporation or on its behalf to recover all profits derived from the transactions.
In providing this remedy, Congress accomplished a dual purpose. It not only provided for an efficient and effective method of accomplishing its primary goal — the protection of the investing public from unfair treatment at the hands of corporate insiders — but extended to the corporation the right to secure for itself benefits derived by those insiders from their exploitation of their privileged position. The United States Court of Appeals for the Second Circuit has stated the policy behind section 16(b) in the following terms (Adler v. Klawans, 267 F. 2d 840, 844):
“ The undoubted congressional intent in the enactment of § 16(b) was to discourage what was reasonably thought to be a widespread abuse of a fiduciary relationship — specifically to discourage if not prevent three classes of persons from making private and gainful use of information acquired by them by virtue of their official relationship to a corporation. ’ ’
Although the provisions of section 16(b) may not apply to all cases of trading on inside information, it demonstrates that a derivative action can be an effective method for dealing with such abuses which may be used to accomplish a similar purpose in cases not specifically covered by the statute. In Brophy *501 v. Cities Serv. Co. (31 Del. Ch. 241, supra), for example, the Chancery Court of Delaware allowed a similar remedy in a situation not covered by the Federal legislation. One of the defendants in that case was an employee who had acquired inside information that the corporate plaintiff was about to enter the market and purchase its own shares. On the basis of this confidential information, the employee, who was not an officer and, hence, not liable under Federal law, bought a large block of shares and, after the corporation’s purchases had caused the price to rise, resold them at a profit. The court sustained the complaint in a derivative action brought for an accounting, stating that “ [p] ublic policy will not permit an employee occupying a position of trust and confidence toward his employer to abuse that relation to his own profit, regardless of whether his employer suffers a loss ” (31 Del. Ch., at p. 246). And a similar view has been expressed in the Restatement, 2d, Agency (§ 388, comment o):
“ c. Use of confidential information. An agent who acquires confidential information in the course of his employment or in violation of his duties has a duty * * * to account for any profits made by the use of such information, although this does not harm the principal. * * * So, if [a corporate officer] has ‘ inside ’ information that the corporation is about to purchase or sell securities, or to declare or to pass a dividend, profits made by him in stock transactions undertaken because of his knowledge are held in constructive trust for the principal.”
In the present case, the defendants may be able to avoid liability to the corporation under section 16(b) of the Federal law since they had held the MAI shares for more than six months prior to the sales. Nevertheless, the alleged use of the inside information to dispose of their stock at a price considerably higher than its known value constituted the same sort of ‘1 abuse of a fiduciary relationship ” as is condemned by the Federal law. Sitting as we are in this case as a court of equity, we should not hesitate to permit an action to prevent any unjust enrichment realized by the defendants from their allegedly wrongful act.
*502 The defendants recognize that the conduct charged against them directly contravened the policy embodied in the Securities Exchange Act but, they maintain, the Federal legislation constitutes a comprehensive and carefully wrought plan for dealing with the abuse of inside information and that allowing a derivative action to be maintained under State law would interfere with the Federal scheme. Moreover, they urge, the existence of dual Federal and State remedies for the same act would create the possibility of double liability.
An examination of the Federal regulatory scheme refutes the contention that it was designed to establish any particular-remedy as exclusive. In addition to the specific provisions of section 16(b), the Securities and Exchange Act contains a general anti-fraud provision in section 10(b), (U. S. Code, tit. 15, § 78j, subd. [b]) which, as implemented by rule 10b-5 (Code of Fed. Beg., tit. 17, § 240.10b-5) under that section, renders it unlawful to engage in a variety of acts considered to be fraudulent. In interpreting this rule, the Securities and Exchange Commission and the Federal courts have extended the common-law definition of fraud to include not only affirmative misrepresentations, relied upon by the purchaser or seller, but also a failure to disclose material information which might have affected the transaction. (See, e.g., Securities & Exch. Comm. v. Texas Gulf Sulphur Co., 401 F. 2d 833, 847-848; Myzel v. Fields, 386 F. 2d 718, 733-735.)
Accepting the truth of the complaint’s allegations, there is no question but that the defendants were guilty of withholding material information from the purchasers of the shares and, indeed, the defendants acknowledge that the facts asserted constitute a violation of rule 10b-5. The remedies which the Federal law provides for such violation, however, are rather limited. An action could be brought, in an exceptional case, by the SEC for injunctive relief. This, in fact, is what happened in the Texas Gulf Sulphur case (401 F. 2d 833, supra). The purpose of such an action, however, would appear to be more to establish a principle than to provide a regular method of enforcement. A class action under the Federal rule might be a more effective remedy but the mechanics of such an action have, as far as we have been able to ascertain, not yet been worked out by the Federal courts and several questions relating thereto have never been resolved.
*503 These include the definition of the class entitled to bring such an action, the measure of damages, the administration of the fund which would be recovered and its distribution to the members of the class. (See Note, 54 Cornell L. Eev. 306, 309, supra.) Of course, any individual purchaser, who could prove his own injury as a result of a rule 10b-5 violation can bring an action for rescission but we have not been referred to a single case in which such an action has been successfully prosecuted where the public sale of securities is involved. The reason for this is that sales of securities, whether through a stock exchange or over-the-counter, are characteristically anonymous transactions, usually handled through brokers, and the matching of the ultimate buyer with the ultimate seller presents virtually insurmountable obstacles. Thus, unless a section 16(b) violation is also present, the Federal law does not yet provide a really effective remedy.
In view of the practical difficulties inherent in an action under the Federal law, the desirability of creating an effective common-law remedy is manifest. “ Dishonest directors should not find absolution from retributive justice ”, Ballantine observed in his work on Corporations ([rev. ed., 1946], p. 216), “ by concealing their identity from their victims under the mask of the stock exchange.” There is ample room in a situation such as is here presented for a “ private Attorney General ” to come forward and enforce proper behavior on the part of corporate officials through the medium of the derivative action. brought in the name of the corporation. (See, e.g., Associated Ind. v. Ickes, 134 F. 2d 694,704; Cherner v. Transitron Electronic Corp., 201 F. Supp. 934, 936.) Only by sanctioning such a cause of action will there be any effective method to prevent the type of abuse of corporate office complained of in this case.
There is nothing in the Federal law which indicates that it was intended to limit the power of the States to fashion additional remedies to effectuate similar purposes. Although the impact of Federal securities regulation has on occasion been said to have created a ‘‘ Federal corporation law,” in fact, its effect on the duties and obligations of directors and officers and their relation to the corporation and its shareholders is only occasional and peripheral. The primary source of the law in this *504 area ever remains that of the State which created the corporation. Indeed, Congress expressly provided against any implication that it intended to pre-empt the field by declaring, in section 28(a) of the Securities Exchange Act of 1934 (48 U. S. Code 908), that “ [t]he rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity ”.
Nor should we be deterred, in formulating a State remedy, by the defendants’ claim of possible double liability. Certainly, as already indicated, if the sales in question were publicly made, the likelihood that a suit will be brought by purchasers of the shares is quite remote. But, even if it were not, the mere possibility of such a suit is not a defense nor does it render the complaint insufficient. It is not unusual for an action to be brought to recover a fund which may be subject to a superior claim by a third party. If that be the situation, a defendant should not be permitted to retain the fund for his own use on the chance that such a party may eventually appear. A defendant’s course, if he wishes to protect himself against double liability, is to interplead any and all possible claimants and bind them to the judgment (CPLR 1006, subd. [b]).
In any event, though, no suggestion has been made either in brief or on oral argument that any purchaser has come forward with a claim against the defendants or even that anyone is in a position to advance such a claim.[1] As we have stated, the defendants’ assertion that such a party may come forward at some future date is not a basis for permitting them to retain for their own benefit the fruits of their allegedly wrongful acts. For all that appears, the present derivative action is the only effective remedy now available against the abuse by these defendants of their privileged position.
As we have previously indicated, what we have written must be read in the light of the charges contained in the complaint, and it must be borne in mind that “ it will be incumbent upon the plaintiff, if he is to succeed, to prove upon the trial the truth and correctness of his allegations.” (Walhovszky v. Carlton, 23 N Y 2d 714,715.)
*505 The order appealed from should be affirmed, with costs, and the question certified answered in the affirmative.
Judges Burke, Soileppi, Bergan, Keating, Breitel and Jasen concur.
Order affirmed, etc.

. In the absence of any such appearance by adverse claimants, we need not now decide whether the corporation’s recovery would be affected by any amounts which might have to be refunded by the defendant to the injured purchasers.