**Eli FRANKEL, Plaintiff,**

**v.**

**Donald SLOTKIN, Carl H. Lindner, Louis A. Guzzetti, Keith E. Lindner, S. Craig Lindner, David H. Lubetzky, Jean H. Sisco, Ronald F. Walker, Jay Wells, American Financial Corporation, FMI Financial Corporation and United Brands Company, Defendants.**

**No. 85 C 3385.**

United States District Court, E.D. New York.

June 2, 1992.

See also, 705 F.Supp. 105.

Kaye, Scholer, Fierman, Hays & Handler, New York City (Jay G. Strum and Michael A. Lynn, of counsel), for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

This shareholders derivative action was originally assigned to the late Judge Costantino and was reassigned to this Judge in May 1990. The court assumes familiarity with Judge Costantino's opinions of August 16, 1986, and January 12, 1989, as well as this court's Memorandum and Order of December 27, 1990.

### I

Plaintiff, record owner of convertible preferred shares of United Brands Corporation ("United Brands"), brought this derivative action on behalf of United Brands alleging that defendants, who include Carl H. Lindner ("Lindner"), members of his family, and corporate entities controlled by him, violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b–5 promulgated thereunder, as well as their state law fiduciary duties, by failing to disclose material information in connection with the purchase of securities.

At all relevant times Lindner indirectly or directly owned controlling interests in United Brands, American Financial Corporation ("American Financial") and FMI Financial Corporation ("FMI"). Lindner and his family owned 100% of the stock of American Financial, which in turn owned approximately 65% of FMI stock. American Financial and FMI also owned stock in United Brands in the amounts of 54% and 7.3%, respectively.

Plaintiff alleges a unitary plan or scheme to increase from 61.3% to 85.8% the percentage of United Brands' common stock owned by American Financial and FMI and thus by the Lindners.

In early March 1985 United Brands had outstanding approximately $105 million principal amount of 5½% convertible subor-

Kaufman Malchman Kaufman & Kirby, New York City (Irving Malchman, of counsel), for plaintiff.

dinated debentures, which were publicly trading at a price between $600 and $620 per debenture with a face value of $1000. With a conversion price of $55, each debenture was convertible into approximately 18 shares of common stock. At the time United Brands common stock was trading at a price between $13.00 and $14.25 per share. No debentureholder would then convert a debenture into common stock. To do so would require exchanging a debenture worth at least $600 on the market for 18 shares of stock which a debentureholder could purchase on the market for about $243 (18 shares at $13.50 each).

On March 4, 1985 United Brands announced a temporary reduction in the conversion price of its convertible debentures from $55 to· $21.50 per share. A debentureholder was then able to receive for each $1000 principal amount of the debentures approximately 46 shares of United Brands common stock having a total market value of approximately $605 to $650, an amount corresponding roughly to the price at which the debentures traded.

American Financial, the principal debenture holder, converted all of its debentures and acquired over 1.3 million shares of United Brands stock. Approximately one third of the debentures held by the public were converted. Public debentureholders thus acquired approximately 1.1 million shares of common stock.

On May 21, 1985 FMI purchased on the open market 1.1 million shares of United Brands stock at $15.18 per share.

On July 5, 1985, FMI announced its intention to make a cash tender offer for up to 4 million shares of United Brands common stock at a price of $20 per share. The United Brands Board of Directors, with the four American Financial directors abstaining, informed its stockholders that it expressed no opinion as to the tender offer. About 3.8 million shares of United Brands stock were ultimately sold to FMI pursuant to the tender offer.

Plaintiff claims that defendants knew in March that FMI would later make a tender offer that would be "friendly and unopposed," inside information upon which defendants traded without disclosure when they converted their United Brands debentures and bought the stock on the open market.

In its December 27, 1990 Memorandum and Order this court denied defendants' first motion for summary judgment, finding it a material issue of fact whether defendants intended in March to make the subsequent tender offer.

Defendants move again for summary judgment, claiming that even if American Financial and FMI had such an intent, the pre-trial discovery showed that neither American Financial nor FMI nor their directors possessed the inside information that United Brands would express no opinion as to the tender offer which would thus be friendly and unopposed.

By order dated February 3, 1992 the court instructed the parties to submit papers clarifying what injury, if any, United Brands, the corporation on whose behalf the action is brought, suffered as a result of the transactions described above. In response defendants said that United Brands suffered no injury. They argue that if only the minority shareholders and not the corporation were injured by that transaction, plaintiff has no standing to raise a claim on behalf of the corporation. Plaintiff urges the court to find that United Brands was injured, and that in any event plaintiff may recover damages on its behalf.

II

THE SECTION 10(b) AND
RULE 10b–5 CLAIM

A. *The Debenture Conversion*

By temporarily lowering the conversion price of its debentures United Brands gave its debentureholders an incentive to convert their debt into equity, thereby presumably benefiting United Brands by decreasing its interest expense and reducing the amount of cash it needed for its sinking fund. After the conversions United Brands could pay dividends in arrears on its preferred stock.

■ Plaintiff argues that no rational debentureholder would have converted debentures because the market value of each debenture was approximately equal to the market value of the shares received in the conversion. But even if this were true, it does not show that the corporation was injured by the transaction. In any event public debentureholders did not act irrationally by changing their investment in the corporation from debt to an equivalent value of equity, measured by the market price.

While plaintiff describes the transaction as a "sale" of United Brands stock at an unfair price, the transaction did not deplete the assets of the corporation. Plaintiff argues that American Financial, by converting its debentures, purchased United Brands stock at a price of approximately $13.33 per share knowing that the stock was worth at least $19 per share. He says that if United Brands had mentioned the planned tender offer in its announcement of a temporary reduction in the conversion price, United Brands shareholders could have enjoined American Financial's conversion of the debentures at the unfair price.

Perhaps some debentureholders, knowing of the plans for a tender offer, would have been willing to convert each debenture into fewer shares. But if United Brands issued too many shares in the transaction, it was the minority shareholders who conceivably were injured by the dilution of their interests. The corporate entity United Brands, which paid out no money in the transaction, suffered no direct economic injury.

■ The court recognizes that defendants may have violated Section 10(b) and Rule 10b–5. Under the misappropriation theory adopted in this circuit, a person violates Rule 10b–5 by misappropriating material nonpublic information in breach of a fiduciary duty and uses that information in a securities transaction. *United States v. Chestman,* 947 F.2d 551, 566 (2d Cir. 1991) (*en banc*). The defendants allegedly misused confidential information belonging to United Brands when they converted de-

bentures and purchased shares on the open market.

The issue is whether United Brands has a claim against defendants. This question of standing was not raised in many of the recent cases interpreting the anti-fraud provisions. Those cases were brought as criminal prosecutions or SEC enforcement proceedings. *See, e.g., United States v. Newman,* 664 F.2d 12, 17 (2d Cir.1981); *Carpenter v. United States,* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987); *United States v. Chestman,* 947 F.2d 551 (2d Cir.1991).

■ To determine whether a party has standing to raise a claim under Section 10(b), the court looks to federal rather than state law. *See Drachman v. Harvey,* 453 F.2d 722, 727–730 (2d Cir.1971).

Plaintiff relies principally on *Goldberg v. Meridor,* 567 F.2d 209 (2d Cir.1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978). Analyzing whether a corporation can be deceived if its directors are parties to fraud, the court in that case stated the "widely recognized" proposition that:

> there is deception of the corporation (in effect, of the minority shareholders) when the corporation is influenced by its controlling shareholder to engage in a transaction adverse to the corporation's interests (in effect, the minority shareholders' interests) and there is nondisclosure or misleading disclosures as to the material facts of the transaction.

*Goldberg,* 567 F.2d at 217.

The analysis in the *Goldberg* opinion relates to the meaning of "deception," and does not address the question whether the Section 10(b) claim was properly brought in a derivative action. The court does not interpret that case to find an identity of interest between the minority shareholders and the corporation such that an injury to one, the minority shareholders, is equivalent to an injury to the other, the corporation.

■ Misappropriation of confidential information belonging to the corporation does not give rise to a Rule 10b–5 claim on

behalf of the corporation when it was not injured by the fraud. Because recovery under federal securities laws, unlike the common law, is limited by statute to actual damages, *Sound Video Unlimited, Inc. v. Video Shack, Inc.,* 700 F.Supp. 127, 142 (S.D.N.Y.1988), proof of injury is an element of the claim. *See FMC Corp. v. Boesky,* 727 F.Supp. 1182, 1188–1193 (N.D.Ill.1989). In some cases confidential information may consist of trade secrets or other property generated by the business, the misappropriation of which injures the corporation. *See Carpenter v. United States,* 484 U.S. 19, 26–27, 108 S.Ct. 316, 321, 98 L.Ed.2d 275 (1987) (*Wall Street Journal* reporter misappropriated from newspaper securities information before publication). But United Brands has not been deprived of the exclusive use of such property.

The debenture conversion caused no harm to United Brands corporation. It could not recover on its own behalf under Section 10(b) or Rule 10b–5. The result is no different when the claim is brought as a shareholder derivative suit.

### B. *The Open Market Purchases*

Plaintiff fares no better to the extent that his federal claim is based on FMI's purchase of shares on the open market. That transaction may have injured public shareholders who sold shares to FMI at $15.81 per share when American Financial was planning a tender offer at $20 per share. But plaintiff has not shown that United Brands, not a party to the transaction, was thus injured.

Plaintiff relies on *Diamond v. Oreamuno,* 24 N.Y.2d 494, 301 N.Y.S.2d 78, 248 N.E.2d 910 (1969), and *Brophy v. Cities Service Co.,* 31 Del.Ch. 241, 70 A.2d 5 (1949), in support of his argument that United Brands may require defendants to disgorge the profits earned by trading on the basis of inside information. But those cases involve common law claims. There is no equivalent derivative right under federal law. *Haberman v. Murchison,* 468 F.2d 1305, 1312 (2d Cir.1972).

Plaintiff's federal claim will be dismissed.

### III

### THE STATE LAW CLAIM

■ Although the court dismisses plaintiff's federal claim, it need not dismiss for lack of jurisdiction a valid pendent state law claim for breach of fiduciary duty. Plaintiff has standing to raise such a claim in federal court because the corporation, although not injured within the meaning of Section 10(b), may nevertheless have suffered an "injury in fact" meeting the constitutional standing requirement as a result of a violation of state common law. *FMC Corp. v. Boesky,* 852 F.2d 981, 993 & n. 23 (7th Cir.1988), *on remand,* 727 F.Supp. 1182, 1188–1193 (N.D.Ill.1989).

But even if defendants acted on confidential information, which defendants dispute, plaintiff has not shown injury to the corporation.

■ Certain state courts have allowed a corporation to recover from its directors profits made by trading on the basis of inside information although the corporation suffered no direct injury from the breach of fiduciary duty. *See Brophy v. Cities Service Co.,* 31 Del.Ch. 241, 70 A.2d 5 (1949); *Diamond v. Oreamuno,* 24 N.Y.2d 494, 498–99, 301 N.Y.S.2d 78, 81–82, 248 N.E.2d 910, 912–913 (1969). Other courts have refused to adopt the "innovative ruling" of the New York Court of Appeals in *Diamond. Schein v. Chasen,* 313 So.2d 739, 746 (Fla.1975) (rejecting *Diamond* approach); *Freeman v. Decio,* 584 F.2d 186, 196 (7th Cir.1978) (interpreting Indiana law to reject *Diamond* ). The courts of New Jersey, where United Brands is incorporated, have not stated whether they would adopt the *Diamond* rule.

The purpose of the common law claim recognized in the *Diamond* case was to deter the abuse of corporate office at a time when federal remedies had not yet proven effective. *Diamond,* 24 N.Y.2d at 502–504, 301 N.Y.S.2d at 84–86, 248 N.E.2d at 914–916. The court, acknowledging the possibility of double liability in theory, stat-

ed that in practice it was unlikely that public shareholders would bring a successful federal claim. *Id.* In any event, the court reasoned, "the mere possibility of such a suit is not a defense, nor does it render the complaint insufficient." *Id.* at 504, 301 N.Y.S.2d at 86, 248 N.E.2d at 915.

In the years since the *Diamond* decision the class action suit under Rule 10b–5 has developed into an effective remedy for insider trading. In addition, under Section 16(b) of the Exchange Act, 15 U.S.C. § 78p, a corporation may recover "short-swing profits" realized by insiders trading in the corporation's stock. Under these circumstances a common law claim to recover profits from insiders presents an actual, and needless, risk of double liability. *See Freeman v. Decio,* 584 F.2d 186, 191–196 (7th Cir.1978).

Defendants are also defending themselves elsewhere concerning the transactions at issue here. *See In re United Brands Securities Litigation,* No. CV 85–5445 (S.D.N.Y., filed 1985). In that case a class of former United Brands shareholders who tendered shares in the 1985 tender offer allege among other things that the defendants violated Section 10(b) and state common law by making material misstatements in the context of the tender offer. There is no reason why other groups of shareholders could not also have brought proper federal claims against United Brands, the directors, and others.

In light of these facts and the developments in federal law since *Diamond,* the court concludes that the New Jersey courts would not recognize a duplicative claim under common law for recovery of profits from insiders.

The complaint is dismissed. The Clerk of the Court shall enter judgment in favor of defendants.

So ordered.