**Bart Michael DeGREGORIO, M.D., Plaintiff,**

v.

**AMERICAN BOARD OF INTERNAL MEDICINE, a Non-Profit Corporation, Defendant.**

**Civ. A. No. 92–4924(MTB).**

United States District Court, D. New Jersey.

Jan. 18, 1994.

---

Michael R. Perle, Hayden, Perle & Silber, Weehawken, NJ, for plaintiff.

Mark Stephen Stewart, Ballard Spahr Andrews & Ingersoll, Camden, NJ, for defendant.

## OPINION

BARRY, District Judge.

In late 1992, plaintiff Bart Michael DeGregorio, M.D., filed a complaint against defendant American Board of Internal Medicine alleging that the Board's procedure, effective as of 1990, of issuing time-limited Board certifications to be followed every ten years by recertification in the various specialties of medicine constitutes a violation of 42 U.S.C. § 1983;[1] a breach of fiduciary duty owed by the Board; a conspiracy in restraint of trade, in violation of the Sherman Act; a conspiracy in restraint of trade, in violation of New Jersey's Antitrust Act; and a common law combination in restraint of trade. Defendant moved for summary judgment, and this court referred the motion to the Hon. Stanley R. Chesler, U.S.M.J., for a Report and Recommendation ("R & R"). By opinion of October 1, 1993, Magistrate Judge Chesler recommended that defendant's motion for summary judgment be granted in all respects save one: the record being presently devoid of evidence on the threshold issue of whether the recertification requirement was designed to further the public good or whether it was made in an arbitrary and/or capricious manner, Magistrate Judge Chesler recommended that summary judgment on the breach of the fiduciary duty claim be denied pursuant to

Fed.R.Civ.P. 56(f) and that discovery on the issue ensue.

The parties timely filed objections to the R & R with defendant, predictably, arguing that its motion for summary judgment should be granted *in toto* and plaintiff, also predictably, arguing that it should be denied *in toto*. As is its obligation, this court has considered *de novo* all portions of the R & R to which the parties have objected. For the reasons which follow, the court rejects the R & R insofar as it recommended that summary judgment on the breach of fiduciary duty claim be denied and in all other respects adopts the R & R. Stated somewhat differently, defendant's motion for summary judgment will be granted.[2]

Initially, the Sherman Act claim fails as a matter of law, for all of the reasons stated by Magistrate Judge Chesler; indeed, the ten pages of Magistrate Judge Chesler's opinion devoted to the Sherman Act claim permits no other conclusion and this court will not retrace the steps he trod in reaching that conclusion. Moreover, because the parties concede that the New Jersey statutory antitrust claim and the common law restraint of trade claim are to be construed in accordance with federal court interpretations of the Sherman Act, those claims fail as well.

The sole remaining claim, therefore, is the breach of fiduciary duty claim. Parenthetically, this court has some difficulty in concluding that the requisite case or controversy is here present or that plaintiff now has standing to litigate this or any other claim in this case. The concern that underlies the fiduciary duty claim is, as Magistrate Judge Chesler put it, "that should the diplomates fail to achieve recertification (and, therefore, lose their certification altogether), their respective patients will be unable to choose them as physicians in certain specialty areas because staff privileges may be obtained (or maintained) in local hospitals only if the physicians are board certified and/or eligible. *See* Amended Complaint at Count Three". R

---

1. The § 1983 claim, reflected in Count One, has been voluntarily dismissed by plaintiff.

2. Plaintiff also brings this action on behalf of all other physicians in the United States and Canada who have received and will receive time-limited certificates. No motion for class certification has been filed and, given the disposition herein, any such motion would be denied as moot.

& R at 9. Query whether there is a case or controversy or whether plaintiff has standing until he seeks recertification in the year 2001—*and* fails the examination—*and* staff privileges are cancelled. All that is before this court at this juncture is sheer speculation bottomed on plaintiff's assumption—or fear—that he will fail the examination.

Related thereto but also distinct therefrom is plaintiff's inability until such time as he is denied recertification to allege damages and, thus, his failure to do so. Indeed, as Magistrate Judge Chesler noted, albeit in connection with the Sherman Act claim, there is at least as of now "not a single piece of evidence before the Court [which] indicates that doctors will be denied or ousted from staff positions should they fail to achieve recertification in the future". R & R at 24. A claim for breach of fiduciary duty is a tort, *Marley v. Palmyra*, 193 N.J.Super. 271, 301, 473 A.2d 554 (1983). Damages must be alleged and cannot be inferred.[3] On this ground alone, the claim must fail.

Moreover, it is not disputed that

... in early 1987, the Board announced that, as of 1990, all newly issued certificates would be valid for ten years only, thus requiring recertification at ten year intervals thereafter. Since 1987, the Board has publicized this fact in the *Policies and Procedures* publication that it provides to people seeking information about certification. [Aff. of Harry R. Kimball, M.D.] at ¶¶ 13, 15 and tabs 2–4 appended thereto. Similarly, the Board has also publicized the standards it will require for future recertification of these time-limited certificates. *See id.* at ¶ 17 and tab 5 thereto (ads in various medical journals commonly circulated among cardiologists).

R & R at 4. With this knowledge, plaintiff took—and failed—the examination for certification in cardiovascular disease first in 1987 and then in 1989. Had he passed one of those examinations, of course, he would have been certified in cardiovascular disease for life because only as of 1990 did the recertification procedure kick in. Plaintiff again took the examination in 1991—and passed, with the timing bringing him within the recertification requirement. The breach of fiduciary duty alleged here—the imposition in 1990 of the recertification procedure—was not, as a matter of law, the breach of any duty then owed to plaintiff who did not, in terms of the cardiovascular disease certification, even pass the examination until the following year at which time the parties first entered into a fiduciary relationship. In 1990, plaintiff simply had no "property right" which defendant "unnecessarily ... impaired". Amended Comp. ¶¶ 38, 39.

Finally, this court rejects Magistrate Judge Chesler's conclusion that it is impossible to determine from the evidence before the court the "threshold issue" as to whether

---

**3.** All of the cases on which plaintiff relies involve fact patterns where the plaintiff can point to a specific and concrete injury. *Berman v. Valley Hosp.*, 103 N.J. 100, 510 A.2d 673 (1986) (physicians denied hospital staff position); *Desai v. St. Barnabas Medical Center*, 103 N.J. 79, 510 A.2d 662 (1986) (physician denied hospital staff privileges); *Higgins v. American Society of Clinical Pathologists*, 51 N.J. 191, 238 A.2d 665, *aff'd after remand*, 53 N.J. 547, 251 A.2d 760 (1968) (pathologist denied recertification); *Falcone v. Middlesex County Medical Soc.*, 34 N.J. 582, 170 A.2d 791 (1961) (physician lost hospital staff privileges); *Leeds v. Harrison*, 9 N.J. 202, 87 A.2d 713 (1952) (plaintiffs denied voting membership in YWCA); *Grodjesk v. Jersey City Medical Center*, 135 N.J.Super. 393, 343 A.2d 489 (Ch.Div.1975) (dentist removed from emergency room rotation schedule).

Plaintiff also relies on *Weiss v. York Hosp.*, 745 F.2d 786 (3d Cir.1984), *cert. den.*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). *Weiss*, of course, did not involve any breach of fiduciary duty, but instead involved violations of the Clayton Act. As in the cases mentioned above, in *Weiss* there was the refusal of a hospital and its medical staff to grant staff privileges to doctors of osteopathy.

There are cases elsewhere which support the proposition that damages need not be alleged in a breach of fiduciary duty claim. *See Zackiva Communications Corp. v. Horowitz*, 826 F.Supp. 86, 88 (S.D.N.Y.1993) ("It is well established that to state a claim for breach of fiduciary duty, a plaintiff need not allege damages to itself."); *see also Diamond v. Oreamuno*, 24 N.Y.2d 494, 301 N.Y.S.2d 78, 81, 248 N.E.2d 910, 912 ("... a corporation fiduciary, who is entrusted with potentially valuable information, may not appropriate that asset for his own use even though, in so doing, he causes no injury to the corporation"). However, in both *Zackiva* and *Diamond* the plaintiffs alleged that the defendants received a benefit as a result of the breach of their fiduciary duty. Plaintiff makes no such allegation here.

the recertification procedure was reasonably designed to further the public good or whether it was adopted in an arbitrary and/or capricious manner. R & R at 13. The affidavit of Harry R. Kimball, M.D., the President of the Board, explains why—and how—the recertification procedure was adopted and plaintiff does not dispute this explanation in any meaningful way.

After setting forth in some detail the mission, function, composition, and status of the Board, Dr. Kimball explains how diplomates are certified and how the Board's standards for certification have "evolved over time", with many changes made in the requirements in order to improve the standards for certification. Kimball Aff. ¶ 12. The Board always announces changes in its policies several years in advance—as it did here—and those changes are prospective only. Id. at ¶¶ 16, 17. In determining to issue time-limited certificates, the Board followed the practice of most medical specialty boards, id. at ¶ 18, and made this determination when, in the mid–1980's, it came to believe that, to be accountable, "it should establish a mechanism to encourage continued scholarship and to promote a continued high standard of clinical competence and patient care by its diplomates". Id. at ¶ 13. It did not time-limit any certificates issued before 1990 but only because it believed that, in accordance with its Policies and Procedures, it could not unilaterally revoke or amend the certificates previously issued unconditionally, such as plaintiff's certificate in internal medicine. Id. at ¶ 14.

The first time-limited certificates issued will expire in the year 2000, id. at 19, with recertification not requiring the retaking of the initial certification examination but, rather, a simpler three-step process, with the objective of the self-evaluation step—an at-home, open book examination in four subject areas of the candidate's choosing as well as in general internal medicine—being to promote continuing scholarship in the candidate's field and to provide diplomates with a mechanism by which to assess their knowledge of recent advances and current concepts. Id. at ¶¶ 22, 24, 25. While the self-examination "modules" are currently being developed, the Board anticipates that the self-evaluation process will require only ten to fifteen hours of the candidate's time over a five year period of time. Id. at 26. The only other requirements for certification are that the candidate be licensed to practice medicine and be in good standing in his or her community or institution and that he or she pass a one day multiple choice examination, with the candidate choosing two "modules" in his or her specialty area and a third in any area, with a single overall score. Id. at ¶¶ 23, 27, 28. This final examination will offer credibility to the public and will test clinical judgment concerning well established medicine that certified specialists should know. Id. at ¶ 28. The Board anticipates that all well-prepared candidates will pass. Id.

Plaintiff does not dispute virtually any of the foregoing. Rather, his affidavit is predicated on the fact that a certificate is an important credential, a fact defendant does not dispute, id. at ¶ 20, and his expectation as to what will ensue if, sometime after the year 2001, he takes and fails the final examination. Plaintiff's sole problem with the recertification procedure itself is directed to the final examination and his assumption, contrary to what defendant posits, that that examination will be as rigorous as it was for the initial certification, requiring an extended period of preparation and study which will severely curtail the time he can otherwise devote to the practice of medicine. DeGregorio Aff. at ¶ 10. Because plaintiff further assumes that the same failure rate will follow, he speculates that he might fail the examination and thus would lose the certification which is an "economic necessity" to practice successfully as a cardiologist, particularly in New Jersey. Id. at ¶¶ 10, 14, 16. He recognizes that because the first recertification examination will not be offered until 1996 or in large numbers until the year 2001 and, indeed, has not yet even been fully developed, he can only "estimate" what the burden of preparation (or, the court suggests, the level of difficulty and the rate of failure) will be. Id. at ¶ 13. Adoption of the recertification policy by the Board, plaintiff argues, has violated the Board's fiduciary duty to him.

Importantly, at no point does plaintiff even suggest that the Board has not acted appropriately[4] or that the reasons proffered for recertification are not legitimate or are not in the public interest. Moreover, he concedes the role the Board plays as the body which sets standards of clinical competence in the various subspecialties of internal medicine, including cardiology, in which connection it establishes training requirements for physicians seeking to have their competence recognized through certification procedures established and administered by the Board, determines and assesses the credentials for certification, and substantiates the competence and professional standards of candidates for certifications through examinations testing the competence of candidates. *Id.* at ¶¶ 4, 5. In a nutshell, Magistrate Judge Chesler wrongly concluded that there was insufficient evidence before the court to determine whether the recertification procedure was reasonably designed to further the public good or whether it was adopted in an arbitrary or capricious manner; rather there was ample undisputed evidence on both scores.

The Report & Recommendation is adopted in part and rejected in part. Defendant's motion for summary judgment will be granted. An appropriate order will issue.

### ORDER

This matter having come before the court through the October 1, 1993 Report and Recommendation of the Honorable Stanley R. Chesler, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.Civ.P. 72(b), and Rule 40(D)(5) of the General Rules of this court; and the court having considered the recommendations of the Magistrate Judge and the objections of the parties;

IT IS on this 14th day of January, 1994,

For the reasons expressed in the court's Opinion of even date hereby

ORDERED that defendant's motion for summary judgment be and hereby is granted.

revoke or amend certificates previously issued unconditionally. Were the recertification procedure to be applied to those certificates, of course, plaintiff could lose his certificate in internal medicine.

---

4. There is some suggestion in plaintiff's submissions, however, that the policy of recertification should also apply to those physicians who were certified before 1990, although plaintiff does not take issue with the Board's stated understanding that it did not have the power to unilaterally