**Phillip R. ARLIA, on behalf of MASSEY ENERGY COMPANY, Plaintiffs,**

v.

**Don L. BLANKENSHIP, et al., Defendants.**

**No. CIV.A. 2:02–1111.**

United States District Court, S.D. West Virginia, Charleston Division.

Dec. 16, 2002.

punishable by imprisonment for a term exceeding one year."

Charles F. Donnelly, Donnelly & Carbone, Charleston, WV, William S. Lerach, Darren J. Robbins, Randall J. Baron, Travis E. Downs, III, Albert H. Meyerhoff, Mary K. Blasy, Andrew J. Brown, Benny C. Goodman, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, Alfred G. Yates, Jr., Law Offices of Alfred G. Yates, Jr., Pittsburgh, PA, for plaintiffs.

Albert F. Sebok, Daniel L. Stickler, Elizabeth O. Lord, Jackson & Kelly, Charleston, WV, Bruce Vanyo, Douglas Clark, Rod Strickland, Wilson Sonsini Goodrich & Rosalti, Palo Alto, CA, Lyle Roberts, Wilson Sonsini Goodrich & Rosati, Reston, VA, for defendants.

## MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

Pending is the plaintiff's motion to remand to state court and for attorney's fees and costs related to that motion [Docket 24]. For the following reasons, the court **GRANTS** the motion to remand and **REMANDS** the case to state court. The court **DENIES** the motion for costs and attorney's fees.

### I. Background

Phillip Arlia, the plaintiff, filed a shareholder derivative suit in the Circuit Court of Boone County, West Virginia, against members of the board of directors and certain officers of the Massey Energy Corporation. Essentially, the complaint alleges that Massey's board members and certain officers have breached their fiduciary duties to the corporation, misappropriated corporate information, and wasted corporate assets by: (1) causing Massey to violate state and federal environmental laws, (2) causing Massey to engage in illegal employment practices; and (3) enabling and failing to prevent "corporate insiders" from trading on insider information and failing to recover any insider gains. The defendants removed the case to federal district court, arguing that the insider trading counts in effect constitute federal securities law claims. Specifically, the defendants argue that the claims relating to insider trading are completely preempted and removable under the terms of the Securities Litigation Uniform Standards Act of 1998 (SLUSA), 15 U.S.C. § 78bb. As such, the defendants argue that this court has original jurisdiction over those federal securities law claims and supplemental jurisdiction over the remaining state law breach of fiduciary duty claim. The plaintiff filed a motion to remand the case to state court as well as a motion for costs and attorney's fees related to that motion.

### II. Discussion

In 1995, Congress passed the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u–4, which, among other things, imposed heightened pleading requirements on plaintiffs pursuing securities fraud class actions. For example, the statute requires any plaintiff who alleges that a defendant "made an untrue statement of a material fact" in connection with a securities sale to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1) (West 2002). The PSLRA "was intended to prevent 'strike suits'— meritless class actions that allege fraud in the sale of securities. *See* H.R. Conf. Rep. No. 105–803 (1998). Because of the expense of defending such suits, issuers were often forced to settle, regardless of the

merits of the action. *See* H.R. Conf. Rep. No. 104–369 (1995)." *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107 (2d Cir.2001).

After the enactment of the PSLRA, however, "a number of securities class action lawsuits ... shifted from Federal to State courts ... [and] this shift has prevented that Act from fully achieving its objectives." H.R. Conf. Rep. No. 105–803 § 2 (1998) (Congressional findings). Accordingly, "in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the Private Securities Litigation Reform Act of 1995," Congress passed the Securities Litigation Uniform Standards Act in an attempt to "enact national standards for securities class action lawsuits involving nationally traded securities, while preserving the appropriate enforcement powers of State securities regulators and not changing the current treatment of individual lawsuits." *Id.* In order to achieve these goals, SLUSA preempts and provides for the removal of certain securities class actions filed in state court. Specifically, the statute provides that:

(1) Class action limitations

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—

(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

(2) Removal of covered class actions

Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. § 78bb(f)(1)-(2) (West 2002). The term "covered class action" basically includes securities fraud lawsuits in which damages are sought on behalf of more than fifty persons and that predominately involve common questions of fact or law. *Id.* § 78bb(f)(5)(B). The statute explicitly excepts shareholder derivatives suits. It provides that "[n]otwithstanding subparagraph (B), the term 'covered class action' does not include an exclusively derivative action brought by one or more shareholders on behalf of a corporation." *Id.* § 78bb(f)(5)(C).

In the motion to remand, Mr. Arlia argues that because this lawsuit is solely a shareholder derivative action, the suit is not a "covered class action" under the terms of SLUSA and therefore is neither preempted nor removable, regardless of whether the underlying claims involve allegations of "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." *Id.* § 78bb(f)(1)(A). While the plain language of the statute would seem to make this argument self-evidently correct, the defendants nonetheless labor mightily to persuade the court that this case is indeed a covered class action subject to preemption and removal.

The defendants open their brief with language from the legislative history of SLUSA expressing "the Committee's intent that the bill be interpreted broadly to reach mass actions and other procedural devices that might be used to circumvent the class action definition." S.Rep. No. 105–182, at 8 (1998). While the plaintiff

has attempted to frame his action as a shareholder derivative suit, the defendants argue, it is in fact a securities fraud class action. The defendants urge the court to look behind the plaintiff's characterization of the complaint and to recognize what they contend is its true nature.

The defendants' argument that Arlia's claim is essentially an insider trading class action rather than a shareholder derivative suit runs as follows. The second and third counts of the complaint, alleging misappropriation of information and waste of assets, contain allegations that certain Massey defendants knew proprietary non-public information suggesting an impending drop in Massey stock and sold Massey shares prior to the public disclosure of that information. The complaint construes this alleged conduct as misappropriation of company information, and claims that "since the use of the Company's proprietary information constitutes a breach of the [defendants'] fiduciary duties, the Company is entitled to the imposition of a constructive trust in favor of Massey on any profits these defendants obtained thereby." (Compl.¶ 135.) The complaint also contains allegations suggesting that the use of such alleged insider information constitutes a waste of corporate assets. (Compl.¶¶ 137–38.) According to the defendants, insider trading does not constitute either misappropriation of information or a waste of corporate assets. Even accepting the factual allegations, they argue, insider trading harms individual shareholders, not the corporation, and such conduct is thus not actionable in a shareholder derivative suit.

Courts have recognized that insider trading typically harms shareholders and perhaps other participants in the securities market, but not the corporation itself. *See Freeman v. Decio,* 584 F.2d 186, 194 (7th Cir.1978) ("It must be conceded that the unfairness that is the basis of the widespread disapproval of insider trading is borne primarily by participants in the securities markets, rather than by the corporation itself."). For example, in this case the plaintiff has alleged that the corporate insiders sold Massey stock before the public disclosure of information that they knew would lower the value of that stock. Even if true, this caused no harm to the corporation—the stock went down because of negative information about the company's performance, not because the insiders traded on that information. The unfairness is to the other holders of Massey stock—the insiders had the opportunity to unload their stock at a time when the market valued that stock more than it did after the information had become public.[1]

Because derivative suits are brought on behalf of the corporation, not individual shareholders, "the traditional common law approach ... [is] that a corporate insider did not ordinarily violate his fiduciary duty to the corporation by dealing in the corporation's stock, unless the corporation was thereby harmed." *Freeman,* 584 F.2d at 191–92. Nonetheless, in *Diamond v. Oreamuno,* 24 N.Y.2d 494, 301 N.Y.S.2d 78, 248 N.E.2d 910 (1969), the New York Court of Appeals recognized such a derivative cause of action. The court noted the defendants' position that "although it is

---

1. The corporation may be harmed by insider trading if, for example, an insider began purchasing shares based on inside information just as "the corporation was about to begin buying its own shares in the market." *Freeman,* 584 F.2d at 194. In such a situation, "by purchasing stock for his own account the insider placed himself in direct competition with the corporation. To the degree that his purchases might have caused the stock price to rise, the corporation was directly injured in that it had to pay more for its purchases." *Id.* Nothing of this sort is alleged here.

admittedly wrong for an officer or director to use his position to obtain trading profits for himself in the stock of his corporation, the action ascribed to them did not injure or damage [the corporation] in any way.... They acknowledge that, by virtue of the exclusive access which defendants and directors have to inside information, they possess an unfair advantage over other shareholders and, particularly, the persons who had purchased the stock from them but, they contend, the corporation itself was unaffected and, for that reason, a derivative action is an inappropriate remedy." *Id.* at 912. The court recognized that the complaint failed to allege any harm to the corporation, but held that this "has never been considered to be an essential requirement for a cause of action founded on a breach of fiduciary duty." *Id.* Ultimely, the court held that:

> Just as a trustee has no right to retain for himself the profits yielded by property placed in his possession but must account to his beneficiaries, a corporate fiduciary, who is entrusted with potentially valuable information, may not appropriate that asset for his own use even though, in so doing, he causes no injury to the corporation. The primary concern, in a case such as this, is not to determine whether the corporation has been damaged but to decide, as between the corporation and the defendants, who has a higher claim to the proceeds derived from the exploitation of the information.

*Id.* Essentially, the *Diamond* court recognized the wrong inherent in insider trading and sought to create a remedy for that wrong. The court thought it essential to disgorge the fruits of wrongdoing from the insiders. Accordingly, it created a derivative cause of action to do so, despite the facts that insider trading did not damage the corporation and thus any recovery to the corporation could be seen as a windfall.

In creating a state law derivative cause of action in this context, the court specifically noted the deficiency of federal law in remedying insider trading. Specifically, the court noted that "unless a section 16(b) violation is also present, the Federal law does not yet provide a really effective remedy. In view of the practical difficulties inherent in an action under the Federal law, the desirability of creating an effective common-law remedy is manifest." *Id.* at 915.

The *Diamond* decision has been the subject of some controversy. In *Freeman*, the Seventh Circuit responded to the argument, accepted by the *Diamond* court, that the corporation deserves the fruits of its own information used by the insiders. The court noted that "[i]f the corporation were to attempt to exploit ... non-public information by dealing in its own securities, it would open itself up to potential liability under federal and state securities laws, just as do the insiders when they engage in insider trading.... [I]nsider trading ... entail[s] the [use] ... of inside information ... in a manner in which the corporation itself is prohibited from exploiting it." *Freeman*, 584 F.2d at 194. That is to say, insider trading does not rob the corporation of an opportunity, because securities laws prohibited the company itself from trading on its own nonpublic information. In response to a certified question from the United States Supreme Court, the Florida Supreme Court likewise rejected "the innovative ruling of the New York Court of Appeals in *Diamond*, [instead] ... adher[ing] to previous precedent established by the courts in this state that actual damage to the corporation must be alleged in the complaint to substantiate a stockholders' derivative action." *Schein v. Chasen*, 313 So.2d 739, 746 (Fla. 1975) (citations omitted).

Moreover, even if "[t]he reasoning of the *Diamond* case was based on sound policy at the time," that reasoning may no longer be persuasive in light of "facts which have significantly changed in the [decades] since that decision was rendered." *Oye v. Swartz* (*In re Symbol Techs. Sec. Litigation*), 762 F.Supp. 510, 517 (E.D.N.Y. 1991). *Diamond* justified the need for a state tort to remedy insider trading in part on the lack of an effective federal remedy. But even ten years ago, in *Oye*, the Eastern District of New York stated that "it is the Court's view that the Rule 10b–5 class action has become the type of effective remedy for insider trading which the New York Court of Appeals had earlier envisaged." *Id.* at 518.[2] Thus, changes in the federal securities law have further undermined the approach in *Diamond. See also Freeman*, 584 F.2d at 195 ("[O]ver the decade since *Diamond* was decided, the 10b–5 class action has made substantial advances toward becoming the kind of effective remedy for insider trading that the [*Diamond*] court ... hoped that it might become," making the creation of an innovative state tort all the more unnecessary and giving rise to the risk of double recovery).

West Virginia has not yet determined whether it would recognize the derivative shareholder tort of misappropriation of information in this context, that is, where there is no discernable harm to the corporation and where federal securities law now provides some recourse. The defendants assume that West Virginia would not recognize the tort. Accordingly, they argue that the plaintiff's insider trading claims are "really" federal securities claims, as federal law provides the only basis for those claims. This argument is misplaced. If the West Virginia courts decline to recognize this tort, then the plaintiff in this action would simply suffer dismissal of his insider trading claims. The plaintiff could then of course replead his claim as a direct class action, not a shareholder derivative claim, in which case the suit would be removable under the plain terms of 15 U.S.C. § 78bb. As currently plead, however, Mr. Arlia's claims are state, not federal, in nature, and thus removal is improper.[3] "[I]t is still the case, as has been reaffirmed by numerous federal courts over the years, that if there is a choice between pursuing federal and state remedies, the federal courts generally will not ignore the plaintiff's preference for seeking relief under a state cause of action and litigation in a state forum." 14B

---

**2.** Despite its skepticism as to the continued wisdom of the *Diamond* approach, the *Oye* court nonetheless permitted the plaintiffs to pursue a *Diamond*-type action, although it structured any recovery so as to avoid the possibility of double recovery under the state tort and federal securities law. *Id.* at 518, 301 N.Y.S.2d 78, 248 N.E.2d 910. As a federal court sitting in diversity applying New York law, the *Oye* court properly considered itself bound by a decision of the New York Court of Appeals.

**3.** Another point made by the defendants in support of their argument that this derivative claim is "really" a direct class action is that the plaintiff is attempting to recover on behalf of individual shareholders, not the corpora-

tion. This is incorrect. As *Diamond* makes clear, in a state derivative suit for misappropriation of information, as with all other derivative claims, any recovery goes to the corporation, not the shareholders. *Diamond*, 301 N.Y.S.2d 78, 248 N.E.2d at 916 n. 1 (referring to "the corporation's recovery"). *See also Oye*, 762 F.Supp. at 518. This is true despite the fact that the shareholders, not the corporation, were harmed. This is another example of why the derivative claim here is not, contrary to the defendants' arguments, "really" a shareholder class action seeking recovery for shareholders. It is a derivative suit (albeit an odd one) on behalf of the corporation, and any recovery would go to the corporation.

*Charles A. Wright, Arthur R. Miller, & Edward H. Cooper,* Federal Practice & Procedure § 3722, at 449 (3d ed.1998) (citing, *inter alia, Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law.")).

If the West Virginia courts do recognize this claim for misappropriation of information, the danger feared by the defendants would arise, namely a mass state cause of action substantially replicating a federal securities violation but lacking the heightened pleading standards of the PSLRA. This could potentially undermine the purpose of Congress is passing SLUSA, which was "to prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than Federal, court." H.R. Conf. Rep. No. 105–803, at 13 (1998). As previously stated, the Senate Committee Report on SLUSA states that "it remains the Committee's intent that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition." S.Rep. No. 105–182, at 8 (1998). The defendants contend that the derivative suit in this case, if recognized by West Virginia courts, would constitute an example of a "procedural device[ ] that might be used to circumvent the class action definition." *Id.*

In light of this legislative history, the defendants' argument has some appeal. The argument fails, however, in light of the plain language of the statute. When "the [statutory] language is plain and 'the statutory scheme is coherent and consistent,' we need not inquire further. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). '[T]he sole function of the courts is to enforce [the statute] according

to its terms.' *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)." *Holland v. Big River Minerals Corp.,* 181 F.3d 597, 603 (4th Cir.1999). The defendants urge this court to interpret the term "covered class action" to include this exclusively derivative action, despite the statute's unambiguous provision that "the term 'covered class action' does not include an exclusively derivative action brought by one or more shareholders on behalf of a corporation." 15 U.S.C. § 78bb(f)(5)(C). The plaintiff's misappropriation claim, if it is viable, is unquestionably "an exclusively derivative action brought by one or more shareholders on behalf of the corporation," *id.,* and therefore does not provide a basis for federal removal jurisdiction.

The only cases in which "courts should venture beyond the plain meaning of the statute [are] those rare instances in which there is 'a clearly expressed legislative intent to the contrary,' *Russello v. United States,* 464 U.S. 16, 20, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (internal quotation marks omitted), in which a literal application of the statute would thwart its obvious purpose, *see Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982), or in which a literal application of the statute would produce an absurd result, *see United States v. American Trucking Ass'ns,* 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940)." *Holland,* 181 F.3d at 603 n. 2. This is not one of those rare cases. First, there is no clearly expressed legislative intent that would require the court to stray from the plain meaning of the statute in this case. While the above-quoted legislative history does indicate a general intent on the part of Congress to preempt and render removable all mass actions based on insider trading, the statute itself makes clear that the shareholder derivative action was not one of the mass actions that Congress intended

to cover. Second, the literal application of this derivative action exception to the class action definition does not thwart the obvious purpose of the statute, although this point is something of a closer call. On balance, even excepting this derivative action, the statute still provides removal for almost all state law claims mirroring federal securities law violations. Moreover, this court cannot confidently conclude that the "obvious" purpose of this statute is to provide removal for even derivative shareholder claims that might replicate federal securities class actions. Congress' intent in passing SLUSA was not only to "enact national standards for securities class action lawsuits involving nationally traded securities," but to do so "while [also] preserving the appropriate enforcement powers of State securities regulators and not changing the current treatment of individual lawsuits." H.R. Conf. Rep. No. 105–803 § 2 (1998). Section 78bb(f)(5)(C) suggests that, for whatever reason, Congress categorized shareholder derivative suits as part of the state regulatory scheme that it saw no need to completely preempt. Accordingly, giving force to the plain meaning of the statute does not thwart the obvious purpose of the statute. Finally, a literal application of the statute does not produce an absurd result. The court concludes that the plaintiff's derivative misappropriation of information claim is not a "covered class action" made removable by 15 U.S.C. § 78bb.

To clarify the scope of this court's ruling, the court notes the importance of "distinguish[ing] between ordinary conflict preemption and complete preemption." *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 186 (4th Cir.2002). "Under ordinary conflict preemption, state laws that conflict with federal laws are preempted, and preemption is asserted as 'a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court.'" *Id.* at 186–87 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). In contrast, "[i]n the case of complete preemption ... Congress 'so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Id.* at 187 (quoting *Taylor*, 481 U.S. at 63–64, 107 S.Ct. 1542). In determining that this case is not removable, the court is only deciding the latter question—complete preemption. A claim may be preempted by federal law but not be completely preempted so as to give rise to federal question jurisdiction. Accordingly, this court's ruling that the plaintiff's claim is not completely preempted is not determinative of whether the claim is nonetheless preempted under ordinary principles of conflict preemption. On remand, if the West Virginia court is inclined to recognize the *Diamond* rule and permit this derivative action, the defendants may attempt to raise ordinary conflict preemption as a federal defense to that claim.[4]

### III. Attorney's Fees and Costs

The plaintiff has also moved for an award of attorney's fees and costs under 28 U.S.C. § 1447(c). While § 1447(c) itself simply provides that "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal," courts applying this section have concluded that "costs and fees will be denied in this case.

---

**4.** This court makes no suggestion regarding the merits (or lack thereof) of such a defense

... when there are reasons to believe that the removability of the case was plausible." 14C *Wright, Miller, & Cooper, supra,* § 3739, at 488. *See, e.g.,* In re *Lowe,* 102 F.3d 731, 733 n. 2 (4th Cir.1996) (denying attorney's fees and costs under § 1447(c) when removal was neither in bad faith nor clearly unwarranted under existing law); *Valdes v. Wal–Mart Stores, Inc.,* 199 F.3d 290, 293 (5th Cir.2000). As this court's discussion of the defendants' ground for removal makes clear, the question of whether removal was proper in this case is an unsettled legal question with plausible arguments on both sides of the issue. Accordingly, the plaintiff's motion for attorney's fees and costs is **DENIED**.

## IV. Conclusion

For the reasons explained above, the court **REMANDS** this case to state court because this court lacks subject matter jurisdiction. The court also **DENIES** the plaintiff's motion for attorney's fees and costs pursuant to 28 U.S.C. § 1447(c).

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.